BISSELL, Circuit Judge,
concurring.
I concur in the result because I do not share the majority’s underlying assumption regarding Owen’s belief about House’s “attitude.”
The majority asserts that Owen was unjustified in any belief that House would have a change of heart. Yet Owen testified that after learning of the off-grade status he spoke with House: “I told Mr. House, I said, You make peace with the milk inspectors. It can be done.” The majority characterizes this order as a mere “suggestion.” It seems to me more in the nature of a condition precedent to disbursing the loan. There is nothing in the *870 record that indicates House led Owen to believe he would not comply with Owen’s mandate. The record is absolutely silent about any response by House. Still, Owen was justified in believing that House would have a change of heart because when a banker tells a borrower to take some specific action before receiving a loan it is in the nature of things that the borrower will perform the act. It is in the borrower’s own interest to cooperate.
The majority takes House’s refusal on two specific occasions in the past to comply with the milkshed’s new policy of disclosure and transforms it into a steadfast and adamant refusal ever to cooperate in the future (planned milk sales would be overstated by 100 percent only if House remained off-grade for the entire year). As the majority observes, such a state of affairs would be “financially ruinous.” It would also necessarily mean that House would default on his loan. The majority refers to this adamant refusal as “House’s position on the suspension” and imputes to Owen knowledge of this “position” as of the December conversation with Seaman.
This theory of the case is not supported by the record. Even if his belief was somehow unjustified, it is evident that Owen did believe that House would cooperate. The Claims Court found that Owen knew House “and considered him to be honest and of good character.” Owen had previously made several loans to House and would have had ample opportunity to evaluate House’s willingness to cooperate. Owen testified that he had “faith in Mr. House to run his own dairy.” In sum, the record does not reveal an intent to deceive; there is no scienter. Therefore, the FmHA cannot prevail on the basis of an intentional misrepresentation. See W. Keeton, D. Dobbs, R. Keeton & D. Owen, Prosser and Keeton on the Law of Torts § 107 (5th ed. 1984).
Nevertheless, a reasonable and prudent banker would have followed up on the status of the permit before disbursing the loan. By the same token, the mandate illustrates the importance of House’s on-grade status. Owen’s failure to confirm the status of the permit before actually disbursing the loan was a failure to conform to the banking standard required by the Act and was thus a breach of the bank’s duty to the government. Though such a failure amounts to only a negligent misrepresentation of material facts, it constitutes a complete defense to FmHA liability on the guaranty. See First National Bank, Henrietta v. Small Business Administration, 429 F.2d 280, 287 (5th Cir.1970) (negligent misrepresentation of material facts constitutes complete defense to liability on the guaranty); Womack v. United States, 389 F.2d 793, 799-800, 182 Ct.Cl. 399 (1968) (intent to mislead not essential in breach of contract, negligent misrepresentation a sufficient basis of liability).